**STATE of North Dakota, Plaintiff and Appellee,**

v.

**James Clark KELLEY, Jr., a/k/a James Clark Kelly, Roger Dale Myers, and Howard Bruce Wayne Holloway, Defendant and Appellant.**

**Crim. No. 890153.**

Supreme Court of North Dakota.

Jan. 18, 1990.

Rodney A. Danielson (argued), Mandan, for defendant and appellant.

Wayne D. Goter (argued), Asst. States Atty., Mandan, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

James Clark Kelley, Jr., appeals from a judgment of conviction entered upon a jury verdict finding him guilty of the crime of murder, a Class AA felony, in violation of section 12.1–16–01, N.D.C.C. We affirm.

This case arose from the death of Walter Chasing Hawk, who died on July 27, 1988, after suffering multiple gunshot wounds. A trial was held commencing on April 25, 1989. At trial in Morton County, the State, although it called a number of witnesses, relied primarily on the testimony of Nicki Stoner.

The undisputed facts relative to this appeal are as follows: On July 27, 1988, Kelley and Stoner were traveling west through the state of North Dakota on Interstate 94. At a rest stop somewhere in the Jamestown area, they picked up a hitchhiker, Walter Chasing Hawk. Stoner drove the vehicle and the first stop was made at Chasing Hawk's place of employment in Mandan, allowing him to pick up a paycheck. After that, they stopped at a bank, a liquor store, and a gas station before heading south for McLaughlin, South Dakota. Chasing Hawk had offered the couple $50 to take him there. Along the way, the three individuals stopped to eat at the Junction Inn on Highway No. 6, south of Mandan, before again proceeding south on Highway No. 6 toward South Dakota.

At this point, Kelley and Stoner gave disparate testimony. Stoner testified that at the time of the murder she was driving, that Kelley was seated in the front passenger seat, and that Chasing Hawk was seated in the rear seat directly behind her. Suddenly, Kelley began shooting Chasing Hawk with a handgun. Stoner was aware that there was a gun in the car, but thought that it was in the trunk. Stoner did not know why Kelley shot Chasing Hawk. She stopped the car and, after being threatened by Kelley, she reluctantly helped remove Chasing Hawk's body from the car to the roadside. Kelley then took Chasing Hawk's money. The car stalled when Stoner tried to turn around and, after being threatened and struck by Kelley, she pushed the car off to the side of the road and flagged down a passing motorist for assistance. After getting a start, she drove to Dickinson, North Dakota, and while enroute, she recalled Kelley telling her to shut up and drive. Upon Kelley's orders, she obtained a motel room under a false name in Dickinson on the evening of July 27, 1989. That night she made a call to a detective in Nevada that she testified she hoped would be traced. The call was traced and on the following morning she and Kelley were arrested.

Kelley, on the other hand, testified that shortly after leaving the Junction Inn, Stoner asked him to drive, which he did. Kelley testified that Stoner was in the front passenger seat and that Chasing Hawk was in the backseat. Stoner and Chasing Hawk were drinking whiskey and talking. The next thing Kelley remembered was Stoner pointing a gun at Chasing Hawk and shooting him. Kelley was aware that a weapon was in the car, but thought that it was in the trunk. Kelley testified that they dragged Chasing Hawk's body to the roadside and that Stoner took Chasing Hawk's money. They proceeded to Dickinson that evening and were arrested the next morning.

During the trial, Kelley requested a jury instruction regarding corroboration of tes-

timony of an accomplice.[1] Section 29–21–14, N.D.C.C., requires corroboration of the testimony of an accomplice in order to support a conviction based upon that testimony.[2]

After hearing arguments of counsel, the trial court refused to give an instruction as to corroboration of accomplice testimony because in its view there was no evidence to indicate that Stoner had acted as an accomplice to effect the death of Chasing Hawk.

Kelley was convicted on April 28, 1989, and sentenced to life-imprisonment on May 17, 1989. On appeal, Kelley argues that the trial court committed reversible error by refusing to give a jury instruction concerning the corroboration of the testimony of an accomplice.

The first question which must be answered is whether or not the determination that a witness is an accomplice is a question of fact or law. The rule, as we have stated it in the past, is that if the facts as to the witness' culpability are disputed or suscep-

tible of different inferences, then it is a question of fact for the jury. If, on the other hand, the facts as to the witness' culpability are neither disputed nor susceptible of different inferences, then it is a question of law for the court. *State v. Thorson*, 264 N.W.2d 441, 442 (N.D.1978). In *Thorson*, we said:

"This court, in the past, has stated that whether or not a person is an accomplice is a question of fact. *State v. Powell*, 73 N.W.2d 777 (N.D.1955); *State v. Kellar*, 8 N.D. 563, 80 N.W. 476 (1899). In both those cases, however, the facts were disputed and susceptible of different inferences. In *State v. McCarty*, 47 N.D. 523, 182 N.W. 754 (1921), this court stated that an instruction that a witness was an accomplice could only be given where there is no dispute in the evidence. Thus, our past statements on this question are consistent with the rule stated above which we now expressly adopt."

*Thorson* at 442–43.

The dispute in the evidence which is referred to must necessarily be construed to

---

1. The requested jury instruction follows:

    "*TESTIMONY OF ACCOMPLICE MUST BE CORROBORATED*

    "A Defendant cannot be found guilty based upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the offense. Corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

    "You must be satisfied that there is some evidence, either direct or circumstantial, aside from the testimony of the accomplice, from which you may infer not only that the crime charged was committed, but that the defendant was implicated in it. The corroborating evidence need not extend to every material point of the accomplice's testimony nor be sufficient in itself to support a conviction.

    "The sufficiency of the corroborating evidence is for you to determine. If the testimony of an accomplice is corroborated, you have the right to consider all of that testimony the same as any other testimony in the case."

    The trial court considered the above requested instruction as well as the following jury instruction which it had prepared:

    "*TESTIMONY OF ACCOMPLICE*

    "When two or more persons, having a common purpose, are involved in the commission of an offense, either directly or by aiding another, each is an accomplice.

    "Mr. Kelley cannot be convicted upon the testimony of an accomplice unless that testimony is corroborated by other evidence that tends to connect him with the commission of the offense.

    "The corroboration is not sufficient if it merely shows that the offense was committed or how it was committed. You must be satisfied that there is some evidence, either direct or circumstantial, aside from the testimony of the accomplice, from which you may infer, not only that the crime charged was committed, but that the defendant was implicated in it. The corroborating evidence need not extend to every point of the accomplice's testimony nor be sufficient in itself to support a conviction. The testimony of one accomplice may not be used to corroborate the testimony of another accomplice.

    "The sufficiency of the corroborating evidence is for you to determine. If the testimony of an accomplice is corroborated, you have the right to weigh all of his testimony the same as any other testimony."

2. Section 29–21–14, N.D.C.C., provides:

    "*Testimony of accomplice—Corroboration required.*—A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

be that of the evidence as to the witness' complicity in the action for which the defendant is being charged. The evidence in the instant case is insufficient to show that Stoner was an accomplice to the murder of Chasing Hawk. We have previously discussed accomplice liability as it is defined in section 12.1–03–01, N.D.C.C.:[3]

> " 'We have said that mere presence at the scene of a crime is not enough to make one an accomplice. However, presence at the scene of a crime is a fact which, together with other facts, may support a finding that the defendant acted as an accomplice. *Zander* [*v. S.J.K.*, 256 N.W.2d 713, 715 (N.D.1977) ].... Additional facts which would support a finding of accomplice liability include ... acting with the kind of culpability required for the offense and sharing the criminal intent of the principal; [or] approving the criminal act by active participation in it or by, in some manner, encouraging it; ...' "

*State v. Bonner*, 361 N.W.2d 605, 612–13 (N.D.1985) (quoting *State v. Pronovost*, 345 N.W.2d 851, 853 (N.D.1984)).

Had Kelley testified, in a case in which Stoner was charged with being an accomplice, that Stoner was his accomplice and that she encouraged him to kill Chasing Hawk and assisted him in doing so and then related all of the things that the parties did together both before and after the commission of the offense, an instruction that an accomplice's testimony must be corroborated would have been appropriate. Had Stoner testified that she encouraged and assisted Kelley in killing Chasing Hawk and then described the activities which she had participated in, both prior to and after the perpetration of the offense, it would have been an appropriate case for giving an instruction to the jury that the testimony of an accomplice must be corroborated before it can be the basis of a conviction of the principal. Neither of those scenarios is the case at hand. In the case at hand there were no accomplices if you believe either one of the two main witnesses and the only eye witnesses to the killing. Under these circumstances, we think that it would have been very misleading to the jury had the court given the jury an instruction to the effect that testimony of an accomplice must be corroborated.

Notwithstanding what we have concluded here, for the sake of argument only, were it to be assumed that the trial court erred in not giving such an instruction, we believe that the conviction should nonetheless be affirmed as the failure to give it under the facts of this case would be harmless error.[4]

If the trial error is one of constitutional magnitude, we must determine whether or not the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence. *State v. Smuda*, 419 N.W.2d 166, 168 (N.D.1988); *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). If, however, the error is nonconstitutional, our task is to determine whether or not the error had a significant impact upon the verdict, but we do not have to find that the error was harmless beyond a reasonable doubt. *State v. Thiel*, 411 N.W.2d 66, 70 (N.D.1987). As the alleged error is not of constitutional magnitude, we apply the significant impact standard.

---

**3.** Section 12.1–03–01, N.D.C.C., in relevant part, reads:

> "*Accomplices.*
> "1. A person may be convicted of an offense based upon the conduct of another person when:
> a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;
> b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or

> c. He is a coconspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection."

**4.** Rule 52, N.D.R.Crim.P., provides:

> "*(a) Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
> "*(b) Obvious Error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Section 29–21–14, N.D.C.C., requires corroboration "by such other evidence as tends to connect the defendant with the commission of the offense...." In analyzing this requirement, we have previously said:

"All that § 29–21–14 requires is that the evidence, circumstantial or otherwise, corroborates the testimony of an accomplice as to some material fact that tends to connect the defendant with the commission of the crime."

*State v. Neurohr*, 376 N.W.2d 805, 806 (N.D.1985).

In the instant case, there is sufficient corroborative evidence that tends to connect Kelley with the commission of the crime: (1) the gun which was apparently used to kill Chasing Hawk was found at the motel in Dickinson under the side of the bed on which Kelley slept; (2) the box of 35 unused cartridges was found hidden in Kelley's jacket; (3) all witnesses testified that Stoner was seen driving the vehicle; (4) both Stoner and Kelley testified that the other took Chasing Hawk's money; however, only $5.00 was found on Stoner while approximately $130 was found on Kelley; (5) witnesses testified that while the three individuals were at the Junction Inn, Kelley went out to the car for a few minutes which would have given him time to take the gun from the trunk and put it under the front seat of the car; (6) Morton County Deputy Lynn White testified that there were bruises on Stoner's body the day after she was arrested; (7) the arrest was precipitated by a phone call Stoner made to a police officer in Nevada.

Therefore, assuming, as we said for the sake of argument only, that the trial court erred in not giving the accomplice instruction, the error could not have had a significant impact upon the verdict and thus would have been harmless error only and not a basis for setting the verdict aside.

Accordingly, we affirm.

LEVINE, J., concurs in the result.

VANDE WALLE, Justice, concurring in result.

I am convinced that the same rationale which requires that the testimony of an accomplice be corroborated in order to convict should apply in this instance. As this Court observed over ninety years ago:

"One who is on trial for his life should be allowed great latitude in the cross-examination of the witness who, by his own confession, can have no hope of escaping the death punishment save through the indulgence of those who, under the law, have his life in their hands. An accomplice, in such a case, in implicating another with him in guilt, is under the influence of the most powerful motive that can shape human conduct. For this reason the law looks with such distrust on his testimony that, as a general rule, it will not suffer another to be convicted on his evidence, in the absence of corroboration. True, the principle has often been stated that one may be convicted on the uncorroborated testimony of an accomplice. But this principle has been regarded with such disfavor that, even in the absence of a statute, courts have generally cautioned juries against convicting where the story of the accomplice stood unsupported by other evidence. Sometimes they have advised the jury to acquit, and in some instances they have directed an acquittal. After conviction, new trials have been granted because the accomplice was uncorroborated. The practice has not been uniform, but the whole trend of it shows unmistakably that the law regards the testimony of the accomplice with distrust." *State v. Kent*, 4 N.D. 577, 62 N.W. 631, 638 (1895).

In this instance, Stoner would have a similar motive for her testimony, *i.e.*, if Kelley were to be convicted she would not be tried for homicide.[1] In oral argument, the State acknowledged that the determination to prosecute Kelley, rather than Stoner, for the murder was in great part due to the fact they believed Stoner and disbelieved Kelley. It is apparent that the trial

---

1. The State originally charged Stoner with being an accomplice to murder in violation of NDCC § 12.1–03–01. Both Kelley and Stoner waived

preliminary hearing and pleaded not guilty to the crimes with which they were charged. Subsequently, the State dismissed the charge of ac-

judge gave considerable thought to this issue because he prepared a proposed instruction which would have required corroboration. Although the precise instruction, including the definition of an accomplice, might not have been appropriate, I believe a somewhat similar instruction that would have required corroboration should have been given when requested by defense counsel. Kelley may not have defended on the "common-plan" theory which would have placed Stoner in the position of an accomplice, *State v. Thorson*, 264 N.W.2d 441 (N.D.1978), but, contrary to the majority, I believe the facts of this case make that theory most plausible. The State determined not to prosecute Stoner, either alone or as an accomplice, and Stoner may not have been an accomplice, if her story is believed, but under the facts of this case her testimony must be looked upon with mistrust.

I, nevertheless, concur in the result reached by the majority opinion. There can be no doubt that all the participants in the trial, including the jury, were well aware that the outcome of the trial would depend upon whether the jury believed Stoner or Kelley. The jury was properly instructed as to its obligation to determine whom of the witnesses it would believe, and, if the jury chose to believe Stoner because she was a more credible witness, there was, as the majority opinion observes, "sufficient corroborative evidence that tends to connect Kelley with the commission of the crime." The majority opinion lists that evidence, and I will not repeat it here. Therefore, I agree that the failure to give an instruction on corroboration is, under the facts of this case, harmless error. Rule 52(a), NDRCrimP.

GIERKE, MESHKE and LEVINE, JJ., concur.

complice to murder against Stoner and she pleaded guilty to the crime of hindering law enforcement, in violation of NDCC § 12.1–08–03. That scenario clearly revealed

that the State believed Stoner's testimony as to what happened when Chasing Hawk was murdered.